2019R00875/DCH



RECEIVED

DEC 1 4 2022

AT 8:30 _1:34 p.m._ M
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | : | Hon. Esther Salas |
| --- | --- | --- |
| v. | : | Crim. No. 22- 840 (ES) |
| ALEXANDRA STCHASTLIVTSEVA | : | 18 U.S.C. § 2 |
|  | : | 18 U.S.C. § 371 |
|  | : | 18 U.S.C. § 1956(h) |
|  | : | 42 U.S.C. § 1320a-7(b) |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting in Newark, charges:

### COUNT ONE
### (Conspiracy to Defraud the United States and to Violate the Anti-Kickback Statute)

1.  At all times relevant to this Indictment:

    a.  Defendant ALEXANDRA STCHASTLIVTSEVA, a resident of New York, owned and operated American Kinetics Lab Inc. ("AKL"), a purported durable medical equipment ("DME") company. AKL was a New York corporation located in Brooklyn, New York.

    b.  Defendant ALEXANDRA STCHASTLIVTSEVA owned, controlled, and/or operated the following entities (collectively with AKL, the "AKL Network"):

| Entity | Approximate Date of Formation | Location |
|---|---|---|
| Alnery Solutions Corp. | October 11, 2018 | New York, NY |
| Choice Home Care Supply Inc. | July 15, 2020 | Tallman, NY |
| Custom Orthopedic Supply LLC | May 1, 2017 | Nanuet, NY |
| Global DME Inc. | October 30, 2018 | New York, NY |
| Sierra Care LLC | July 9, 2020 | Brooklyn, NY |
| US Orthopedics Corp. | October 4, 2017 | New York, NY |

    c. Nelly Petrosyan, a co-conspirator not charged in this Indictment who was a resident of New York, New York, and others owned and operated US Orthopedics Corp. and Alnery Solutions Corp. with defendant ALEXANDRA STCHASTLIVTSEVA.

    d. Reinaldo Wilson, a co-conspirator not charged in this Indictment, and others owned and operated Advantage Choice Care, LLC ("ACC"), a purported telemedicine company located in Bayonne, New Jersey, and AIM Marketing PA ("AIM"), a Maryland corporation based in Bayonne, New Jersey.

    e. Steve Kahn, a co-conspirator not charged in this Indictment, and others owned and operated Sunrise Medical Inc. ("Sunrise"), a purported telemedicine company in Pompano Beach, Florida, and STK Marketing Inc. ("STK"), a Pompano Beach, Florida company.

f.   Lyn Weaver, a co-conspirator not charged in this Indictment, and others owned and operated Wellness for Life ("WFL"), an Oregon marketing company.

### The Medicare Program

g.   The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received Medicare benefits were referred to as Medicare beneficiaries.

h.   Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

i.   Medicare was divided into four parts: Medicare Parts A through D. Medicare Part B covered medically necessary physician office services and outpatient care, including DME, such as prosthetics, orthotics, continuous glucose monitors, ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces.

j.   DME companies, physicians, and other health care providers that rendered services to Medicare beneficiaries were referred to as Medicare "providers" ("Providers"). To participate in Medicare, Providers were required to submit an application. As provided in the application, every Provider was required to meet certain standards to obtain and retain billing privileges to

Medicare, such as, but not limited to the following: (1) provide complete and accurate information on the application, with any changes to the information on the application reported within 30 days; (2) disclose persons and/or organizations with ownership interests or managing control; (3) abide by applicable Medicare laws, regulations, and program instructions, such as, but not limited to, the Federal Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)); (4) acknowledge that the payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions; and (5) refrain from knowingly presenting or causing to present a false or fraudulent claim for payment by Medicare and submitting claims with deliberate ignorance or reckless disregard of their truth or falsity. Providers were provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

   k. If Medicare approved the application, Medicare assigned the Provider a Medicare Provider Identification Number ("PIN" or "provider number"). Providers assigned a Medicare PIN to render services to beneficiaries could submit claims for reimbursement to Medicare that included the PIN assigned to that Provider. Payments under Medicare were often made directly to the Provider rather than to a Medicare beneficiary. This payment occurred when Providers submitted the claim to Medicare for payment, either directly or through a billing company. CMS contracted with various companies to receive, adjudicate, process, and pay Medicare Part B claims, including claims for DME.

l.  Under Medicare Part B, DME was required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury, ordered by a medical professional, properly documented, and provided as represented to Medicare. Medicare would not pay claims procured through kickbacks and bribes.

m.  Medicare used the term "ordering/referring" Provider to identify the physician or nurse practitioner who ordered, referred, or certified an item or service reported in that claim. Individuals who ordered, referred, or certified these items or services were required to have the appropriate training, qualifications, and licenses.

n.  A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the items or services were provided, the cost of the items or services, the name and identification number of the physician or other health care provider who ordered the items or services, and the name and identification number of the Provider who provided the items or services. Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers.

o.  Medicare regulations required Providers to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. Medicare required complete and accurate patient medical records so that Medicare could verify that the items or services

were provided as described on the claim form. Medicare required sufficient records to permit Medicare to review the appropriateness of Medicare payments to Providers.

### The Conspiracy

2. From in or around May 2017, and continuing through in or around the present, in the District of New Jersey, and elsewhere, the defendant,

**ALEXANDRA STCHASTLIVTSEVA**,

did knowingly and intentionally conspire and agree with Nelly Petrosyan, Reinaldo Wilson, Steve Kahn, Lyn Weaver, and others known and unknown to the Grand Jury to:

a. defraud the United States by cheating the United States government and any of its agencies out of money and property, and by impairing, impeding, obstructing, and defeating through deceit, craft, trickery, and dishonest means, one of the United States government's lawful functions, that is HHS's administration and oversight of Medicare; and

b. knowingly and willfully offer and pay remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, namely, Medicare, and to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health

care program, namely, Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A)-(B).

### Object of the Conspiracy

3. It was the object of the conspiracy for defendant ALEXANDRA STCHASTLIVTSEVA and her co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes in return for completed DME orders and other documentation used to submit claims to Medicare (collectively, "doctors' orders"); (b) submitting and causing the submission of claims to Medicare for DME that was ordered through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented to Medicare; and (c) diverting proceeds of the conspiracy for the personal use and benefit of the defendant and her co-conspirators, and to further the fraud.

### Manner and Means of the Conspiracy

4. The manner and means by which defendant ALEXANDRA STCHASTLIVTSEVA and her co-conspirators sought to accomplish the object of the conspiracy included, among others, the following:

   a. Defendant ALEXANDRA STCHASTLIVTSEVA, Nelly Petrosyan, and others, through the AKL Network, paid illegal kickbacks and bribes to obtain thousands of Medicare beneficiaries' personally identifiable information from Reinaldo Wilson, Steve Kahn, Lyn Weaver, and others, in order for defendant ALEXANDRA STCHASTLIVTSEVA and others, through the AKL

Network, to submit and cause the submission of false and fraudulent claims to Medicare for DME purportedly provided to those Medicare beneficiaries.

  b. Defendant ALEXANDRA STCHASTLIVTSEVA, Nelly Petrosyan, and others, through the AKL Network, paid illegal kickbacks and bribes to Reinaldo Wilson, Steve Kahn, Lyn Weaver, and others in exchange for doctors' orders for DME that were used in connection with the submission of false and fraudulent claims to Medicare. Reinaldo Wilson, Steve Kahn, Lyn Weaver, and others paid doctors and other medical professionals to sign doctors' orders for DME.

  c. Many of these doctors' orders were for DME that was medically unnecessary because, among other reasons, the orders were generated by medical professionals, located in the District of New Jersey and elsewhere, who did not have a preexisting doctor-patient relationship with the Medicare beneficiary, did not perform a physical examination of the Medicare beneficiary, and frequently had only a short telephonic conversation with the Medicare beneficiary.

  d. Defendant ALEXANDRA STCHASTLIVTSEVA, Nelly Petrosyan, Reinaldo Wilson, Steve Kahn, Lyn Weaver, and others concealed and disguised the scheme by entering into sham contracts and agreements that falsely labeled payments as "marketing" or "business process outsourcing" expenditures, and by creating and maintaining false and fraudulent invoices.

  e. Defendant ALEXANDRA STCHASTLIVTSEVA, Nelly Petrosyan, and others submitted false and fraudulent application documents to

Medicare that concealed from Medicare defendant ALEXANDRA STCHASTLIVTSEVA's ownership interest in the AKL Network by disclosing to Medicare only the identities of co-owners like Nelly Petrosyan.

　　　f.　　Defendant ALEXANDRA STCHASTLIVTSEVA submitted and caused the submission of more than $31.1 million in false and fraudulent claims to Medicare for DME that was ordered through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented to Medicare. Medicare paid the AKL Network more than $17.3 million based on these claims.

### Overt Acts

　　5.　　In furtherance of the conspiracy and to accomplish its object, defendant ALEXANDRA STCHASTLIVTSEVA and her co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

　　　a.　　On or about May 1, 2018, defendant ALEXANDRA STCHASTLIVTSEVA, Nelly Petrosyan, and others offered and paid an illegal kickback and bribe in exchange for doctors' orders for DME for beneficiaries, located in the District of New Jersey and elsewhere, to Steve Kahn in the form of a wire transfer from US Orthopedics' bank account ending in x1811 to STK's bank account in the approximate amount of $15,000.

　　　b.　　On or about December 10, 2018, defendant ALEXANDRA STCHASTLIVTSEVA, Nelly Petrosyan, and others offered and paid an illegal kickback and bribe in exchange for doctors' orders for DME to Reinaldo Wilson

and others, located in the District of New Jersey and elsewhere, in the form of a wire transfer from US Orthopedics' bank account ending in x1811 to AIM's bank account in the approximate amount of $5,000.

   c. On or about June 9, 2020, defendant ALEXANDRA STCHASTLIVTSEVA and others offered and paid an illegal kickback and bribe in exchange for doctors' orders for DME for beneficiaries, located in the District of New Jersey and elsewhere, to Lyn Weaver in the form of a wire transfer from AKL's bank account ending in x2450 to WFL's bank account in the approximate amount of $10,000.

   d. On or about June 19, 2020, defendant ALEXANDRA STCHASTLIVTSEVA and others offered and paid an illegal kickback and bribe in exchange for doctors' orders for DME for beneficiaries, located in the District of New Jersey and elsewhere, to Lyn Weaver in the form of a wire transfer from AKL's bank account ending in x2450 to WFL's bank account in the approximate amount of $10,000.

   e. On or about April 21, 2021, defendant ALEXANDRA STCHASTLIVTSEVA and others offered and paid an illegal kickback and bribe in exchange for doctors' orders for DME for beneficiaries, located in the District of New Jersey and elsewhere, to Lyn Weaver in the form of a wire transfer from Global DME's bank account ending in x1167 to WFL's bank account in the approximate amount of $4,500.

In violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH SIX
### (Offering and Paying Health Care Kickbacks)

6. Paragraphs 1 and 3 through 5 of this Indictment are re-alleged here.

7. On or about the dates set forth below, in the District of New Jersey, and elsewhere, the defendant,

### ALEXANDRA STCHASTLIVTSEVA,

did knowingly and willfully offer and pay remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, namely, Medicare, and to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, namely, Medicare, as set forth below each constituting a separate count of this Indictment:

| Count | Approximate Date | Originating Account | Recipient | Approximate Amount |
|---|---|---|---|---|
| 2 | December 10, 2018 | US Orthopedics Corp. | AIM | $5,000 |
| 3 | January 1, 2019 | US Orthopedics Corp. | AIM | $1,260 |
| 4 | January 9, 2019 | US Orthopedics Corp. | AIM | $2,340 |
| 5 | January 16, 2019 | US Orthopedics Corp. | AIM | $4,200 |
| 6 | January 22, 2019 | US Orthopedics Corp. | AIM | $3,465 |

Each in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title 18, United States Code, Section 2.

## COUNT SEVEN
### (Conspiracy to Commit Money Laundering)

8.  Paragraphs 1 and 3 through 5 of this Indictment are re-alleged here.

9.  From in or around May 2017, and continuing through in or around the present, in the District of New Jersey and elsewhere, the defendant,

**ALEXANDRA STCHASTLIVTSEVA**,

did knowingly combine, conspire, confederate, and agree with Nelly Petrosyan and others known and unknown to the Grand Jury to knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 and such property having been derived from a specified unlawful activity, that is, conspiracy to defraud the United States and pay and receive kickbacks relating to a health care benefit program, namely, Medicare, contrary to Title 18, United States Code, Section 1957.

In violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATIONS

1. The allegations in this Indictment are realleged here for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction of one or more of the Federal health care offenses, as defined in 18 U.S.C. § 24(a), charged in Counts One through Six of this Indictment, defendant ALEXANDRA STCHASTLIVTSEVA shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that she obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of each such offense.

3. Upon conviction of the money laundering offense in violation of 18 U.S.C. § 1956(h) alleged in Count Seven of this Indictment, defendant ALEXANDRA STCHASTLIVTSEVA shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in the money laundering offense, and all property traceable to such property.

### Substitute Assets Provision

4. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18 United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A True Bill

*[signature redacted]*

*[signature: Philip R. Sellinger]*
PHILIP R. SELLINGER
United States Attorney

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

/s/ Darren C. Halverson
DARREN C. HALVERSON
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

15

CASE NUMBER: 22-__840 (ES)__

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

ALEXANDRA STCHASTLIVTSEVA

## INDICTMENT FOR

18 U.S.C. § 371
18 U.S.C. § 1956(h)
18 U.S.C. § 2
42 U.S.C. § 1320a-7(b)

A True Bill.



PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

DARREN C. HALVERSON
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
202-880-2233